UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEAN HALL,

                      Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, CORRECTIONAL MEDICAL ASSOCIATES OF NEW YORK, P.C., MELISSA RAMOS AS ADMINISTRATOR OF THE ESTATE OF DR. RAUL RAMOS, ASSISTANT DEPUTY WARDEN LILLIAN BENBOW, WARDEN CLEMENT GLENN, MEDICAL DOES 1–7, C.O. DOES 1–7,

                      Defendants.

21-CV-2308 (ALC)

<u>OPINION AND ORDER</u>

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff Sean Hall brings this action against the City of New York ("the City"), New York City Health and Hospitals Corporation ("HHC"), Correctional Medical Associates of New York, P.C., Melissa Ramos as Administrator of the Estate of Dr. Raul Ramos, Assistant Deputy Warden Lillian Benbow, Warden Clement Glenn, and Medical Does 1–7, Correctional Officer Does 1–7 for claims under Title II of the Americans with Disabilities Act ("ADA"); Section 794 of the Rehabilitation Act; 42 U.S.C. § 1983; and New York City Human Rights Law ("NYCHRL") § 8-107(15). Plaintiff's claims arise out of a period in March and April 2018 during which Plaintiff was confined in Rikers Island.

      The City and HHC (collectively, "Moving Defendants") move to dismiss Plaintiff's Second Amended Complaint, arguing that no genuine issues exist as to any material fact. Plaintiff moves for partial summary judgment asking the Court to find that the Moving Defendants violated the ADA, the Rehabilitation Act, and the NYCHRL such that a trial would

1

address solely the issue of damages.  The Court considers the Moving Defendants' and Plaintiffs' (collectively, the "Parties") motions concurrently herein.

After careful review, the Court **DENIES** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for partial summary judgment.

## BACKGROUND

### I. Factual Background[1]

For a full recitation of the facts, the Court directs readers to the Parties' Rule 56.1 Statements.

Plaintiff was incarcerated at Rikers Island from March 16, 2018 to April 23, 2018.  *See* ECF No. 74 ("Def. Counterstatement") ¶ 8.  Initially, Plaintiff was placed in the Anna M. Kross Center ("AMKC") at Rikers Island until March 17, 2018 when he was moved to the North Infirmary Command ("NIC") at Rikers Island.  *Id.*  Plaintiff was diagnosed with Type II diabetes at age 18 and has experienced a history of health issues, including amputations on both legs; mild intermittent asthma; hypertension; chronic kidney disease; and heart failure.  *See id.* ¶ 10; ECF No. 77 ("Pl. Counterstatement") ¶ 13.  Prior to 2018, Plaintiff's right leg was amputated below the knee and his big toe on his left foot was amputated.  Def. Counterstatement ¶¶ 11–12.  After his right leg was amputated, Plaintiff started using an electric wheelchair, but the Parties dispute whether this was because he could not use his hand to push a manual wheelchair.  *Id.* ¶ 14.  Plaintiff has suffered from diabetic neuropathy in his right hand since 2016 or 2017, but Moving Defendants dispute whether he ever reported this medical history, or any pain in his hands, to any medical provider at Rikers Island.  *Id.* ¶ 14.

Plaintiff entered Rikers Island with his electric wheelchair and was allowed to keep it at

---

[1] Plaintiff did not attach Exhibits E and K to the declaration in support of his motion for partial summary judgment, but Plaintiff later attached the exhibits to a declaration in support of his his reply.  *See* ECF Nos. 81-1, 81-2.

some point while at AMKC, but at his intake at NIC, a corrections officer ("CO") took his electric wheelchair; however the Parties dispute when exactly the electric wheelchair was replaced with a manual wheelchair and what explanation may have been given to Plaintiff. *Id.* ¶ 15–16. Plaintiff's case was presented to the NIC due to wheelchair dependency with below the knee amputation, seizure, congestive heart failure, diabetes and asthma, and he was accepted to the unit that same day. Pl. Counterstatement ¶ 16.

Plaintiff alleges that he could not use the manual wheelchair due to neuropathy in his right hand and he could not get food for the first couple of days at NIC, but Moving Defendants dispute this by stating that Plaintiff was observed frequently using a manual wheelchair while in Rikers Island. Def. Counterstatement ¶ 24. Plaintiff also alleges that he could not independently access the showers for the first few days of his stay. *Id.* ¶ 25. Plaintiff also claims he could not visit the law library or the clinic because he would have had to use the manual wheelchair or receive assistance from COs or other inmates, but Moving Defendants contend that he could have used the manual wheelchair to travel to these places. *See id.* ¶¶ 25–30. Moreover, the record is replete with Plaintiff's visits to the doctors and nurses in his dorm. *See generally* ECF 81-1.

Additionally, when Plaintiff arrived at Rikers Island, he was wearing diabetic footwear specially made for his remaining left foot. Def. Counterstatement ¶ 17. Plaintiff alleges that he told the CO at the AMKC intake that the shoe was necessary diabetic footwear, but the CO took the shoe, telling Plaintiff it was not permitted. *Id.* ¶ 19. Plaintiff received a non-diabetic sneaker for his left foot. Pl. Counterstatement ¶ 27. Dr. Ross McDonald testified about the process for an inmate to get a diabetic shoe at Rikers Island, noting that the turnaround time would be in the order of weeks. Def. Counterstatement ¶ 20.

3

On March 17, 2018, the NIC pre-admission appointment provider noted that Plaintiff had a wheelchair dependency. ECF No. 81-1 at 113. On March 19, 2018, two days after Plaintiff's motorized wheelchair was confiscated, Plaintiff complained to Dr. Jasdeep Mangat of left foot pain. *Id.* at 94. On March 20, 2018, Plaintiff requested a new wheelchair from his appointment provider, Dr. Asha Kumar. *Id.* at 90. On March 23, 2018, Plaintiff requested his home wheelchair from Dr. Kumar, who advised that due to security reasons, he needed to use a manual wheelchair. *Id.* at 85. On March 28, 2018, Plaintiff spoke with Dr. Raul Ramos and asked him for stronger medications and that his electric wheelchair be returned. *Id.* at 62. Plaintiff showed Dr. Ramos a "legal aid[] document." *Id.* Both requests were denied and Plaintiff was told that security rules do not allow personal wheelchairs to be used. *Id.* Dr. Ramos also observed Plaintiff getting out of his bed and into his wheelchair with no difficulty. *Id.*

On April 3, 2018, Plaintiff was seen by Dr. Kumar to evaluate a left foot wound. *Id.* at 54. Dr. Asha Kumar noted that there was a big corn and calluses at the sole of his foot and that the skin was extremely dry. *Id.* Dr. Kumar also noted that Plaintiff used the wheelchair for ambulation. *Id.*

On April 16, 2018, Plaintiff spoke with Anook Toussaint regarding complaints made to 311 about DOC and the medical staff. *Id.* at 19. Toussaint notes that Plaintiff stated that he was not able to use his motorized wheelchair as per a judge's order. *Id.* Toussaint also advised Plaintiff that there were security reasons as to why he could not have a motorized wheelchair and a leg prosthesis. *Id.* at 21.

Plaintiff, his wife, and his attorneys at the Legal Aid Society made complaints about Plaintiff's medical treatment, the need for his electric wheelchair, and a lack of proper medications while he was housed at NIC. Def. Counterstatement ¶ 31. On March 22, 2018,

4

Plaintiff's lawyer sent an email indicating that Plaintiff could not use a manual wheelchair without experiencing shortness of breath and pain. Pl. Counterstatement ¶ 32.

## II. Procedural Background

On March 16, 2021, Plaintiff filed the initial Complaint. ECF No. 1. On June 3, 2021, Plaintiff filed an Amended Complaint. ECF No. 10. On June 25, 2021, Plaintiff filed a Second Amended Complaint on June 25, 2021.[2] ECF No. 64-1 ("SAC"). The SAC named as Defendants the Moving Defendants, Correctional Medical Associates of New York, P.C., Melissa Ramos as Administrator of the Estate of Dr. Raul Ramos, Assistant Deputy Warden Lillian Benbow, Warden Clement Glenn, Medical Does 1–7, and C.O. Does 1–7. *See id.*

The SAC contains the following causes of action: (1) violations of the ADA against all Defendants; (2) violations of the Rehabilitation Act against all Defendants; (3) deprivation of rights claims under 42 U.S.C. § 1983 against Ramos, Benbow, Glenn, Medical Does 1–7, and C.O. Does 1–7; (4) *Monell* claims under 42 U.S.C. § 1983 against Moving Defendants; and (5) NYCHRL claims against all Defendants. *See id.*

On July 22, 2021, the Parties stipulated to a voluntary dismissal of the *Monell* claims against Moving Defendants. ECF No. 23. On July 23, 2021, Moving Defendants filed Answers to the Second Amended Complaint. ECF Nos. 24–25. On January 12, 2023, plaintiff voluntarily dismissed all claims against Assistant Deputy Warden Lillian Benbow. ECF No. 44.

Discovery was completed in December of 2023, and by Order dated January 30, 2024, the deadline for filing motions for summary judgment was extended to February 26, 2024. ECF No. 60. On March 4, 2024, Moving Defendants submitted their motion, supporting declaration

---

[2] The SAC was improperly filed on the docket and was not subsequently refiled by Plaintiff's counsel. The Court herein relies on the version of the SAC attached to Defendants' declaration in support of its motion for summary judgment. *See* ECF No. 64-1.

and exhibits, Rule 56.1 Statement, and supporting memorandum of law.  ECF Nos. 63, 64 ("Def. Br. Decl."), 65 ("Def. 56.1 Statement"), 66 ("Def. Br.").  Also on March 4, 2024, Plaintiff filed his motion, supporting declaration and exhibits, Rule 56.1 Statement, and supporting memorandum of law.  ECF Nos. 67, 68 ("Pl. Br. Decl."), 69 ("Pl. 56.1 Statement"), 70 ("Pl. Br.").

On April 19, 2024, Moving Defendants filed their opposition to Plaintiff's partial summary judgment motion and their 56.1 counterstatement.  ECF. Nos. 73 ("Def. Opp."), 74 ("Def. Counterstatement").  Also on April 19, 2024, Plaintiff filed his opposition to Moving Defendants' summary judgment motion, supporting declaration, and his 56.1 counterstatement.  ECF Nos. 75 ("Pl. Opp."), 76 ("Pl. Opp. Decl."), 77 ("Pl. Counterstatement").

On May 10, 2024, Moving Defendant filed their reply and a supporting declaration.  ECF Nos. 78 ("Def. Reply Decl."), 79 ("Def. Reply").  Also on May 10, 2024, Plaintiff filed his reply and a supporting declaration.  ECF Nos. 80 ("Pl. Reply"), 81 ("Pl. Reply Decl.").

During the summary judgment briefing, Plaintiff conceded to the removal of all Doe Defendants.  *See* Pl. Opp. at 23.  Defendants Ramos, Glenn, and the Correctional Medical Associates of New York, P.C. have not appeared in this action.

In assessing the instant summary judgment motions, the Court considers the following outstanding claims as to the Moving Defendants:  (1) violations of the ADA; (2) violations of the Rehabilitation Act; (3) and NYCHRL claims.

## STANDARD OF REVIEW

Summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56;

*Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252). At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "[I]n cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988) (citations omitted).

## DISCUSSION

### I. ADA and Rehabilitation Act Claims

"Title II of the ADA requires that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (quoting 42 U.S.C. § 12132). Section 504 of the Rehabilitation Act dictates "that '[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....'" *Id.* (quoting 29 U.S.C. § 794(a)). The Second Circuit applies the same analysis under both statutes, so the Court shall "treat [the] claims under the two statutes identically." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

To prove a violation under these statutes, "plaintiffs demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Id.* (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)). The Parties neither dispute that Plaintiff is a qualified individual with a disability nor that Moving Defendants are public entities subject to the ADA. Instead, they dispute whether Plaintiff was excluded from a protected "service, program, or activity," and whether any alleged exclusion was due to his disability. Def. Reply at 15.

### A. Reasonable Accommodations

To that end, the Court must consider whether Moving Defendants denied "meaningful access" to Plaintiff. *Henrietta D.*, 331 F.3d at 273. "[T]o assure meaningful access, reasonable accommodations in the [ ] program[s] or benefit[s] may have to be made." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). "The hallmark of a reasonable accommodation is effectiveness." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 189 (2d Cir. 2015). "Specifically, a reasonable accommodation need not be perfect or the one most strongly preferred by the plaintiff, but it still must be effective." *Wright*, 831 F.3d at 72 (cleaned up).

In prison, "[a] reasonable accommodation must provide effective access to prison activities and programs." *Id.* at 73 (citing *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999)) Moreover, "[a]n accommodation is not plainly reasonable if it is so inadequate that it deters the plaintiff from attempting to access the services otherwise available to him." *Id.* (citing *Disabled in Action v. Bd of Elections in City of N. Y.*, 752 F.3d 189, 200 (2d Cir. 2014)). "Recreational activities, medical services, and educational and vocational programs at state prisons are benefits within the meaning of Title II." *Torres v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:20-CV-0301, 2024 WL 3498500, at *7 (N.D.N.Y. Mar. 13, 2024), *appeal withdrawn*, No. 24-1958, 2024 WL 5344155 (2d Cir. Oct. 24, 2024) (cleaned up).

As to whether the accommodations provided by the Moving Defendants were effective or plainly unreasonable, the record shows that there is a genuine dispute of material facts not fit for resolution in summary judgment. Plaintiff submits much evidence showing that, at least for some days, Plaintiff could not use his manual wheelchair to such an extent that he could not get food or access the showers. Def. Counterstatement ¶¶ 24–25. Plaintiff has testified that he has suffered from neuropathy since 2016 or 2017—which complicates his use of a manual

9

wheelchair—however, there is no evidence in any of the many medical notes that Plaintiff ever specifically raised the issue of his hand pain with any of the medical staff. *Id.* ¶ 14. The record shows that Plaintiff continued using the manual wheelchair, traveling around the NIC and also on his own to the visitors' center, which was in a separate building. Pl. Counterstatement ¶ 53. Last, the record even shows that there was a process, albeit a slow one, of obtaining diabetic shoes. Def. Counterstatement ¶ 20.

Plaintiff notes in his reply that Moving Defendants failed to meet their burden of rebutting the reasonableness of Plaintiff's proposed accommodations—the motorized wheelchair and the diabetic footwear. Pl. Reply at 3. Although Defendants did not respond to this argument in the briefing, the Court considers that the record contains evidence—although slight—that Defendants pointed to security reasons as a burden. This poses a disputed material fact and, moreover, at trial the key question would be whether a jury would find an accommodation to be reasonable. Having found that there is a genuine dispute of material fact as to that whether or not the accommodation is itself plainly reasonable, the Court must save the burden-shifting for trial.

### B. Disparate Treatment

In his motion, Plaintiff appears to also argue that Moving Defendants' deliberate indifference to Plaintiff's disabilities amounts to disparate treatment under the ADA, centering on Moving Defendants' confiscation of the motorized wheelchair and diabetic footwear such that Moving Defendants "acted with at least deliberate indifference to the strong likelihood that implementing its policy or custom would violate federally protected rights." *K.A. v. City of New York*, 413 F. Supp. 3d 282, 304 (S.D.N.Y. 2019). Moving Defendants argue that they were not deliberately indifferent to Plaintiff's disabilities.

10

To establish a claim for inadequate medical care under § 1983, a plaintiff must show that a defendant was deliberately indifferent to her serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To do so, the plaintiff must satisfy a two-prong test: (1) show the alleged deprivation was objectively "sufficiently serious," (*see Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990)); and (2) the charged official must act with a sufficiently culpable state of mind. *Id.*

To satisfy the objective prong, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted)). To satisfy the subjective prong, the defendants must "know, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

Plaintiff argues that "DOC's ADA policy of taking away of an inmates' medically issued assistive device, as it is written and practiced, creates a standard aimed not at accommodation for access to programs and services . . . but at individualized assessment of the assistive device by medical staff at Rikers." Pl. Br. at 12. But here, there are genuine disputes of material facts in light of Plaintiff's numerous health visits in which his health concerns were addressed, his receiving a wheelchair (albeit not motorized), and Moving Defendants' evaluations of his requests for motorized wheelchairs. At this juncture, the Court cannot render summary judgment on these claims either.

### II.     NYCHRL Claims

To bring a reasonable accommodation claim under NYCHRL § 8-107(15), a plaintiff must establish that: (1) they have a disability; (2) the defendant knew or should have known of

11

the disability; (3) an accommodation would enable them to use or enjoy the public accommodation; (4) and the defendant refused to provide an accommodation. *See Heggs v. City of New York*, 2023 U.S. Dist. LEXIS 149647, at *62–63 (E.D.N.Y. 2023). Having found that a genuine issue of material fact exists as to whether there is a reasonable accommodation under ADA and Rehabilitation Act claims, the Court also cannot render summary judgment over the NYCHRL claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED** and Plaintiff's partial motion for summary judgment is **DENIED**. The Clerk of the Court is respectfully directed to terminate the motions docketed at ECF Nos. 63 and 67. The Parties are **ORDERED** to attend a status conference, in person, in Courtroom 444, 40 Foley Square on May 1, 2025 at 2:00 p.m.

**SO ORDERED.**

**Dated: March 31, 2025**
   New York, New York

ANDREW L. CARTER, JR.
United States District Judge